JUDGE HELLERSTEIN



**14 CV 4730**

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDITH PRENTISS, | |
|             Plaintiff, | No. _____ |
| -against- | |
| BRIAD RESTAURANT GROUP, LLC, a New Jersey corporation, | |
|             Defendants. | |

**COMPLAINT FOR DISCRIMINATION; DECLARATORY AND INJUNCTIVE RELIEF**

DISABILITY RIGHTS ADVOCATES
40 Worth Street, Tenth Floor
New York, NY 10113
Tel: (212) 644-8644
Fax: (212) 644-8636
TTY: (877) 603-4579
*Attorneys for Plaintiff*

## INTRODUCTION

1.     This lawsuit challenges ongoing discrimination by Defendant Briad Restaurant Group, LLC ("Briad") based on its continuing failures to operate, build, and renovate the Wendy's restaurant located at 3939 Broadway, New York, NY 10032 ("Washington Heights Wendy's" or "the restaurant") in a manner that complies with the Americans with Disabilities Act and the Human Rights Law of New York State and New York City.

2.     Plaintiff Edith Prentiss has encountered numerous barriers to access at the Washington Heights Wendy's, including, but not limited to, the following barriers:

a) The queue line that customers must pass through before ordering food is less than 36 inches wide.  Thus, it is too narrow for a wheelchair user to pass through.

b) Food service counters at the restaurant are higher than 36 inches, so they are too tall for wheelchair users to order food at.

c) The dining area has no spaces for wheelchair users to sit at tables and enjoy their meals.

d) The bathrooms are not accessible to wheelchair users.

3.     These barriers deter Ms. Prentiss from patronizing the Washington Heights Wendy's.

4.     There is sufficient space at the Washington Heights Wendy's to remedy all of these access barriers.

5.     Defendant, however, has taken no action to ensure that all customers who wish to purchase and eat food at the restaurant can do so.

6.     Instead, it has chosen to renovate the restaurant to make it even less accessible to persons with mobility disabilities.

7.     Briad has had ample notice of the barriers preventing persons with mobility disabilities from dining at the Washington Heights Wendy's.

8.     For more than 20 years, the Americans with Disabilities Act has guaranteed equal access to public accommodations for persons with mobility disabilities.

9.     Fifteen years ago, Wendy's International, the franchisor of the restaurant, promised the U.S. Department of Justice and the Attorneys General of nine states that it would remove accessibility barriers at all of its restaurants and advise all franchisees of their obligation to comply with the Americans with Disabilities Act.

10.     More recently, the manager of the Washington Heights Wendy's represented in writing that it would bring the restaurant into compliance with the ADA by December 31, 2011.

11.     Despite these commitments, Defendant continues to deny persons with mobility disabilities equal access to the Washington Heights Wendy's.

12.     This Complaint seeks an injunction requiring Defendant to remove barriers to full and equal access so that individuals with mobility disabilities may patronize the Washington Heights Wendy's on the same terms as ambulatory persons.

## JURISDICTION

13.     This is an action for declaratory and injunctive relief brought pursuant to Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*  This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

14.     This Court has jurisdiction to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## VENUE

15.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in the District where this Complaint is filed, because a substantial part of the events or omissions giving rise to the claims

alleged herein occurred in this District and the property that is the subject of this action is situated in this District.

**PARTIES**

16.   Plaintiff Edith Prentiss has used a wheelchair for mobility since 1992. She is substantially limited in the major life activity of walking; thus, she is a person with a disability within the meaning of the ADA and the Human Rights Law of New York State and New York City.

17.   Ms. Prentiss buys food at the Washington Heights Wendy's about four times per year.

18.   She would patronize the restaurant approximately once per week if it was accessible to wheelchair users.

19.   Defendant Briad Restaurant Group, LLC is a limited liability corporation formed under the laws of the State of New Jersey, with its principal place of business in Livingston, New Jersey.

20.   Briad is a franchisee of Wendy's International.

21.   Briad owns, operates, and/or controls approximately 50 Wendy's Restaurants throughout New York, New Jersey, and Pennsylvania, including the Washington Heights Wendy's.

22.   Briad also franchises numerous other restaurants, including, but not limited to, T.G.I. Friday's, CUPS frozen yogurt, and Zinburger Wine and Burger Bar.

## FACTUAL ALLEGATIONS

### A.    The Washington Heights Wendy's Is Inaccessible to Plaintiff and Other Individuals Who Use Wheelchairs.

23.    Ms. Prentiss currently orders food at the Washington Heights Wendy's about four times per year.

24.    The Washington Heights Wendy's is located one block from New York Presbyterian Hospital, where Ms. Prentiss travels for medical appointments.

25.    It is also located two blocks from the meeting place of Community Board 12, where Ms. Prentiss regularly attends meetings concerning local community issues.

26.    To order food at the Washington Heights location, all patrons must navigate a narrow queue measuring 24 inches wide.

27.    This is narrower than the minimum of 36 inches that is permitted under the ADA.

28.    The metal lane dividers used to form the customer queue are bolted into the floor, so neither customers nor managers can move them aside.

29.    Before Ms. Prentiss began using a wheelchair, she frequently ordered and ate food at the Washington Heights Wendy's.

30.    Once she started using a wheelchair in 1992, however, she could no longer navigate the narrow queue line.

31.    When Ms. Prentiss goes to the Washington Heights Wendy's, she must wait outside the queue because the line is too narrow for her wheelchair to navigate.

32.    To order food, she is forced to wait until a Wendy's employee comes out from behind the counter to take her order directly.

33.     Restaurant employees usually do not take her order until they have served all ambulatory customers waiting in the queue line, even people who entered the store after Ms. Prentiss.

34.     Unlike ambulatory patrons at the Washington Heights Wendy's, Ms. Prentiss would have to surrender her credit card to a Wendy's employee for them to bring to the main counter and swipe so that she can purchase food.

35.     The counter where patrons order food is 42 inches high.

36.     This is higher than the maximum of 36 inches that is permitted under the ADA.

37.     If Ms. Prentiss orders food despite the access barriers she must face, she cannot eat in the restaurant because there is no wheelchair-accessible seating.

38.     There are two unisex bathrooms at the Washington Heights Wendy's.

39.     Although the first bathroom is designated as accessible, neither bathroom is actually accessible to wheelchair users.

40.     In the bathroom designated as accessible, the water closet is located in a niche that is only 27 inches wide.

41.     This is narrower than the minimum of 48 inches that is permitted under the ADA.

42.     There is one grab bar positioned vertically on the wall to the left of the water closet.

43.     The ADA requires all water closets not in stalls to have two horizontal grab bars, one on the wall behind the water closet and one on the wall alongside the water closet.

44.     The toilet paper dispenser is located around a corner from the niche where the water closet is located.

45.     The counter surface for the lavatory is 36 inches above the finish floor.

46.   This is higher than the maximum of 34 inches permitted under the ADA.

47.   To use the first bathroom, Ms. Prentiss must position her wheelchair directly in front of the toilet so that she can transfer.

48.   She cannot comfortably transfer to and from her wheelchair because there is so little clearance surrounding the water closet.

49.   In the second bathroom, the counter where the sink is located protrudes 19 inches into the clear floor space, leaving only 31 inches of clear floor space.

50.   The door is located directly in front of the sink counter.

51.   There are only 13 inches of clear floor space between the door and the counter.

52.   Ms. Prentiss cannot enter this bathroom because she cannot maneuver her wheelchair around the counter that protrudes into the clear floor space.

53.   Ms. Prentiss is deterred from using the bathrooms at the Washington Heights Wendy's because the access barriers make it difficult or impossible for her to use them.

54.   Every time that Ms. Prentiss goes to the Washington Heights Wendy's, she has notified an employee that the customer queue is inaccessible to her because she uses a wheelchair.

55.   She has also called the Wendy's customer service line several times to inform them of the access barriers.

56.   The Washington Heights Wendy's is owned, leased, and/or operated by Briad.

57.   Briad controls and/or manages the day-to-day operations of the Washington Heights Wendy's.

**B.      Defendant Knows That the Washington Heights Wendy's Is Inaccessible, But Refuses to Act to Remedy Disability Access Violations.**

58.      On August 27, 1998, a Federal-State Task Force consisting of the U.S. Department of Justice and nine state governments entered into a settlement with Wendy's International under the ADA and state disability rights laws (hereafter, "Settlement").

59.      The Settlement mandated that Wendy's International either remove or modify queues where customers wait in line to order food in all of its restaurants to comply with the ADA standards for clear width and turning space.

60.      Under the Settlement, Wendy's International was required to renovate all customer queues by February 27, 2000.

61.      If Wendy's International decided to modify queues rather than removing them, the settlement barred Wendy's from commencing any modifications until it received approval from the Department of Justice.  Settlement ¶¶ 12, 15(b).

62.      For pre-existing restaurants that were not built according to Wendy's International's standard building plans, Wendy's International was required to either remove queue line dividers or modify them according to non-standard specifications to be no narrower than the standard plans.  *Id.* ¶ 15(c).

63.      As part of the Settlement, Wendy's International agreed to send letters to all present and future owners of franchised restaurants that explained the franchisee's legal obligation to comply with the ADA, set forth the ADA architectural accessibility standards, and offered assistance in facilitating franchisees' compliance with the ADA.  *Id.* ¶ 16.

64.      On September 15, 2011, Plaintiff's counsel wrote to the manager of the Washington Heights Wendy's to inform them of the following ADA violations:

a) The lines where customers wait to place their orders are approximately 28 inches wide. The ADA requires the access lanes to be a minimum of 36 inches wide.

b) Wheelchair users cannot access either of the two counters where customers place orders. To reach the first counter, customers must squeeze through a route that is less than 30 inches wide. A railing completely blocks access to the second counter.

c) There is ample space to widen at least one line.

65.    On September 26, 2011, a representative of the former franchisee of the Washington Heights Wendy's, Wen-Kev Management, wrote that the Washington Heights Wendy's was scheduled for a full renovation.

66.    The representative promised that the restaurant would come into full compliance with the ADA no later than December 31, 2011.

67.    When the renovation took place, Defendant replaced the railings with wider material. That alteration further reduced the accessibility of the restaurant by narrowing the queue line from 28 inches wide to 24 inches wide.

68.    Defendant took no action to remedy any of the other ADA violations enumerated in the letter from Plaintiff's counsel.

## COUNT I
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

69.    Plaintiff re-alleges and incorporates by reference all allegations previously set forth in this Complaint.

70.    Title III of the ADA prohibits discrimination against people with disabilities "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to) or operates a place of public accommodation." 42 U.S.C. § 12182(a).

71.     Under Title III, public accommodations may not exclude an individual with a disability from participating in or benefiting from the goods, services, facilities, privileges, advantages or accommodations of the entity or otherwise discriminate against her on the basis of disability.  42 U.S.C. § 12182(b)(1)(A)(i).

72.     Under Title III, a "public accommodation" includes "a restaurant, bar, or other establishment serving food or drink."  42 U.S.C. § 12181(7)(B).

73.     Defendant has discriminated against Plaintiff by denying her the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of the facilities owned, operated, or contracted for usage by Defendant.  42 U.S.C. § 12182(b)(1)(A)(i).

74.     Defendant has discriminated against Plaintiff by affording her the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of the facilities owned, operated, or contracted for usage by Defendant in a manner that is not equal to that afforded to other individuals.  42 U.S.C. § 12182(b)(1)(A)(ii).

75.     Defendant has discriminated against Plaintiff by providing goods, services, facilities, privileges, advantages, or accommodations that are different or separate from those provided to other individuals.  42 U.S.C. § 12182(b)(1)(A)(iii).

76.     Defendant has discriminated against Plaintiff by failing to provide goods, services, facilities, privileges, advantages, or accommodations in the most integrated setting appropriate. 42 U.S.C. § 12182(b)(1)(B).

77.     Defendant has discriminated and continues to discriminate against Plaintiff by failing to remove architectural barriers where such removal is readily achievable.  42 U.S.C. § 12182(b)(1)(2)(A)(iv).

78.    Defendant has discriminated and continues to discriminate against Plaintiff by failing to design and construct facilities that are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(1).

79.    Defendant has discriminated and continues to discriminate against Plaintiff by failing to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

80.    Plaintiff is an individual with a disability within the meaning of the ADA and the regulations promulgated thereunder. She has an impairment that substantially limits the major life activity of walking. 42 U.S.C. § 12102; 28 C.F.R. § 36.104.

81.    The 1991 Standards for Accessible Design, 28 C.F.R. Part 36 App. A ("1991 Standards"), apply to all new construction and alterations to public accommodations that took place before March 14, 2012.

82.    Public accommodations may not alter their facilities in such a way that reduces the accessibility of the facility below the requirements for new construction. 28 C.F.R. Part 36 App. A § 4.1.6(1)(a).

83.    Under the 1991 Standards, food service lines must be a minimum of 36 inches wide. 28 C.F.R. Part 36 App. A § 5.5.

84.    Under the 1991 Standards, a place of public accommodation must provide paths of travel that are a minimum of 36 inches wide for persons with disabilities. 28 C.F.R. Part 36 App. A § 4.3.3.

85.     Under the ADA, a public accommodation must provide clear turning space for wheelchair users that is either a circle with a diameter of 60 inches or a T-shape extending 36 inches at both its arms and base. 28 C.F.R. Part 36 App. A § 4.2.3.

86.     Under the ADA, at least five percent of fixed tables at a restaurant, but no less than one, must be accessible to wheelchair users. 28 C.F.R. Part 36 App. A § 5.1.

87.     Under the 1991 Standards, the minimum clear floor space around a water closet designed for a front approach is 48 inches as measured perpendicular to the side wall and 66 inches as measured perpendicular to the rear wall. 28 C.F.R. Part 36 App. A § 4.16.2.

88.     Under the 1991 Standards, the minimum length for the grab bar on the side wall next to the water closet is 42 inches. 28 C.F.R. Part 36 App. A § 4.16.4.

89.     Under the 1991 Standards, the minimum length for the grab bar on the rear wall behind the water closet is 24 inches. 28 C.F.R. Part 36 App. A § 4.16.4.

90.     Under the 1991 Standards, toilet paper dispensers shall be installed within reach for persons with disabilities. 28 C.F.R. Part 36 App. A § 4.16.6.

91.     Under the 1991 Standards, lavatories shall be mounted with the counter surface no higher than 34 inches above the finish floor. 28 C.F.R. Part 36 App. A § 4.19.2.

92.     Defendant's conduct constitutes ongoing and continuous violations of the ADA. Unless restrained from doing so, Defendant will continue to violate the law.

93.     Through its conduct, Defendant has caused and will continue to cause Plaintiff immediate and irreparable injury.

94.     Plaintiff is entitled to injunctive relief and reasonable attorneys' fees and costs. 42 U.S.C. § 12188.

95.     WHEREAS, Plaintiff prays for relief as set forth below.

## COUNT II
## VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

96.     Plaintiff re-alleges and incorporates herein all previously alleged paragraphs of the Complaint.

97.     The New York State Human Rights Law ("NYSHRL") provides that "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the . . . disability . . . of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof." N.Y. Exec. Law § 296(2)(a).

98.     Under the NYSHRL, "[t]he opportunity to obtain . . . the use of places of public accommodation . . . without discrimination because of . . . disability . . . is hereby recognized and declared to be a civil right." N.Y. Exec. Law § 291(2).

99.     The term "place of public accommodation" in the NYSHRL includes "restaurants, or eating houses, or any place where food is sold for consumption on the premises . . . and all stores where ice cream, ice and fruit preparations or their derivatives, or where beverages of any kind are retailed for consumption on the premises . . . ." N.Y. Exec. Law § 296.9.

100.    The term "disability" in the NYSHRL includes

a) a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques or

b) a record of such an impairment or

c) a condition regarded by others as such an imparment.

N.Y. Exec. Law § 292(21).

    101.    "Discriminatory practice" is defined in the NYSHRL to include:

i)    a refusal to make reasonable modification in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations;

ii)    a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in undue burden;

iii)    a refusal to remove architectural barriers . . . in existing facilities . . ., where such removal is readily achievable; and

iv)    where such person can demonstrate that the removal of a barrier under subparagraph (iii) of this paragraph is not readily achievable, a failure to make such facilities, privileges, advantages or accommodations available through alternative methods if such methods are readily achievable.

N.Y. Exec. Law § 296.2(c)(i)-(iv).

    102.    By the conduct described above, Defendant has committed unlawful discriminatory practices against Plaintiff in violation of the New York State Human Rights Law.

    103.    Defendant's conduct constitutes an ongoing and continuous violation of the NYSHRL. Unless restrained from doing so, Defendant will continue to violate said law.

104.    Unless enjoined, this conduct will continue to inflict injuries upon Plaintiff, and she will suffer irreparable harm in that she will continue to be discriminated against and denied the accommodations, advantages, facilities, or privileges of the Washington Heights Wendy's.

105.    Defendant's discriminatory conduct is ongoing.  Consequently, Plaintiff is entitled to injunctive relief and reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff prays for relief as set forth below.

## COUNT III
## VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

106.    Plaintiff re-alleges and incorporates herein all previously alleged paragraphs of the Complaint.

107.    The New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(4)(a) provides: "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation because of the actual or perceived . . . disability . . . of any person directly or indirectly, to refuse, withhold from or deny to such person the accommodations, advantages, facilities, or privileges thereof . . . "

108.    The NYCHRL defines the term "place or provider of public accommodation" to include "providers, whether licensed or unlicensed, of goods, services, facilities, accommodations, advantages or privileges of any kind, and places, whether licensed or unlicensed, where goods, services, facilities, accommodations, advantages or privileges of any kinds are extended, offered, sold other otherwise made available." N.Y.C. Admin. Code § 8-102(9).

109.    By the acts and conduct described above, Defendant has committed unlawful discriminatory practices against Plaintiff in violation of the New York City Human Rights Law.

110.    Defendant's conduct constitutes an ongoing and continuous violation of the NYCHRL.  Unless restrained from doing so, Defendant will continue to violate said law.

111.    This conduct, unless enjoined, will continue to inflict injuries for which Plaintiff has no adequate remedy at law.

112.    Plaintiff will suffer irreparable harm in that she will continue to be discriminated against and denied the accommodations, advantages, facilities or privileges of Defendants' programs and services.

113.    Defendant's discriminatory conduct is ongoing.  Consequently, Plaintiff is entitled to injunctive relief and reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff prays for relief as set forth below.

## COUNT IV
## DECLARATORY RELIEF

114.    Plaintiff re-alleges and incorporates herein all previously alleged paragraphs of the Complaint.

115.    Plaintiff contends that Defendant denies failing to comply with applicable laws prohibiting discrimination against persons with disabilities in violation of the Americans with Disabilities Act and the Human Rights Law of New York State and New York City.

116.    A judicial declaration is necessary and appropriate at this time so that each of the parties may know their respective rights and duties and act accordingly.

WHEREFORE, Plaintiff prays for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief against Defendant:

117.    That Defendant be enjoined from violating the Americans with Disabilities Act and the Human Rights Law of New York State and New York City;

118.   For an Order finding and declaring that Defendant's acts, omissions, policies, and

practices as challenged herein are unlawful;

119.   For an award of Plaintiff's reasonable attorneys' fees and costs; and

120.   For such other relief that the Court may deem just and proper.


Dated:  June 26, 2014              Respectfully submitted,
        New York, New York
                                   DISABILITY RIGHTS ADVOCATES


                                   Julia M. Pinover (JMP333)
                                   Rebecca J. Rodgers (RR1349)
                                   DISABILITY RIGHTS ADVOCATES
                                   40 Worth Street, Tenth Floor
                                   New York, NY 10113
                                   Tel:  (212) 644-8644
                                   Fax:  (212) 644-8636
                                   TTY:  (877) 603-4579
                                   *Attorneys for Plaintiff*